EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Adalberto López Torres y otros | Certiorari |
|---|---|
| Peticionarios | |
| v. | 2026 TSPR 69 |
| Hogar Sanación, LLC y otros | 218 DPR ___ |
| Recurridos | |

Número del Caso: CC-2025-0588

Fecha: 23 de junio de 2026

Tribunal de Apelaciones:

Panel XI

Representante legal de la parte peticionaria:

Lcdo. Fernando Aguayo Ruiz

Representante legal de la parte recurrida:

Lcdo. Pedro J. Rivera Rivera

Materia: Procedimiento Civil – Revisión de una determinación interlocutoria a través de un recurso de certiorari es incompatible con el proceso sumario de desahucio; conversión de un proceso de desahucio sumario a uno de naturaleza ordinaria descansa en la sana discreción del tribunal.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Adalberto López Torres y otros<br><br>Peticionarios<br><br>v.<br><br>Hogar Sanación, LLC y otros<br><br>Recurridos | CC-2025-0588 |

El Juez Asociado Señor Candelario López emitió la Opinión del Tribunal.

En San Juan Puerto Rico, a 23 de junio de 2026.

En esta ocasión nos corresponde evaluar por primera vez si es posible la revisión de una determinación interlocutoria en un procedimiento de desahucio de naturaleza sumaria. Por considerar que la revisión a través de un recurso de *certiorari* de una determinación interlocutoria es incompatible con el proceso sumario de desahucio y con la intención del legislador de impartir agilidad al proceso, contestamos en la negativa.

Por otra parte, reiteramos que la conversión de un proceso de desahucio sumario a uno de naturaleza ordinaria descansa en la discreción del juzgador, quien tiene el deber de auscultar los méritos de las defensas esgrimidas y los hechos específicos que se aducen para proceder, si así lo entiende, a ordenar la tramitación del proceso por la vía ordinaria.

Veamos el trasfondo fáctico que da lugar a la controversia.

# I

El presente recurso tiene su origen en una *Demanda* de desahucio sumario y cobro de dinero presentada el 17 de abril de 2024 por el Sr. Adalberto López Torres por sí y como apoderado de sus hermanas, Sras. Adilsa López Torres, Adaline López Torres y Adamari López Torres (en conjunto, parte peticionaria) contra Hogar Sanación, LLC (Hogar Sanación).[1] Según expuesto en la *Demanda*, la parte peticionaria alegó que es dueña de dos fincas urbanas, las cuales constan de dos solares localizados en el municipio de Humacao. De este modo, se argumentó que, el 11 de mayo de 2017, la parte peticionaria otorgó un contrato de arrendamiento de cinco años con Hogar Sanación por un canon mensual de $1,500 y una penalidad de $250 por pago tardío. El referido contrato era prorrogable a cinco años adicionales a discreción de Hogar Sanación, pero la prórroga de este conllevaría un aumento al canon a $1,700 mensuales. Además, el contrato de arrendamiento le proveía a Hogar Sanación un derecho de opción de compraventa de los inmuebles dentro del término de los primeros cinco años de arrendamiento. Según presentado en la *Demanda*, el contrato prohibía que Hogar Sanación subarrendara las propiedades objeto del arrendamiento, salvo que obtuviese consentimiento anticipado y por escrito de la parte

---

[1] El 8 de mayo de 2024, la parte peticionaria presentó una *Demanda enmendada*, con el propósito de incluir como codemandada a New Beginning Center, Inc.

peticionaria. Las partes también acordaron que el incumplimiento de Hogar Sanación con cualquier cláusula del contrato implicaría la invalidación de este.

Por otro lado, la parte peticionaria alegó que, desde agosto de 2022, Hogar Sanación ha incumplido con el pago del canon, al no pagar la renta acordada. Además, la parte peticionaria indicó que advino en conocimiento de que Hogar Sanación subarrendó las propiedades eje del contrato de arrendamiento a New Beginning Center, Inc. sin notificarle a estos.

Debido a esto, la parte peticionaria solicitó el desahucio y lanzamiento de Hogar Sanación y New Beginning Center, Inc. de ambas propiedades. Además, la parte peticionaria solicitó que se le condene a estas a pagar $34,000 por concepto de renta vencida y no pagada hasta abril de 2024 (adicional a $1,700 mensuales por cada mes posterior a abril del 2024 en que las demandadas continuasen ocupando las propiedades); $5,000 por concepto de penalidades no pagadas hasta abril de 2024 (cuya suma aumenta $250 mensuales por cada mes posterior a abril del 2024 que continuasen ocupando la propiedad y no paguen la renta correspondiente); los intereses por mora a la tasa del interés legal desde el vencimiento de cada uno de los pagos reclamados y hasta la fecha de la sentencia, los intereses sobre los intereses por mora, a la tasa del interés legal, desde la fecha de la *Demanda* hasta la fecha

de la sentencia; costas, gastos y honorarios de abogado y el interés postsentencia aplicable fijado por la Oficina del Comisionado de Instituciones Financieras (OCIF), vigente a la fecha de la sentencia, sobre todas las sumas adjudicadas en la sentencia.

Por su parte, el 3 de junio de 2024, Hogar Sanación presentó una *Contestación a demanda, reconvención y demanda contra tercero*, en la que negó las alegaciones expuestas en la *Demanda*, presentó sus defensas afirmativas e instó una causa de acción contra el Sr. David Ramírez Rodríguez (tercero demandado). Hogar Sanación alegó que la parte peticionaria y el tercero demandado le habían engañado, ya que no le notificaron los gravámenes por embargos del Departamento de Hacienda que tenían las propiedades. Asimismo, arguyó que la parte peticionaria incumplió con el contrato, debido a que cuando Hogar Sanación decidió ejercer su derecho a opción el 28 de abril de 2022, y se le rechazó el mismo. Además, alegó que realizó mejoras a las propiedades objeto del contrato de arrendamiento. De este modo, Hogar Sanación indicó que le aplicaba el precepto *exceptio non adimpleti contractus*, ya que a la parte peticionaria incumplir con el derecho de opción establecido contractualmente, no estaba obligado a pagar el canon mensual de arrendamiento. De la misma forma, Hogar Sanación indicó que, debido al alegado dolo y, bajo la doctrina de *exceptio non adimpleti contractus*, habían

adquirido un título superior al de la parte peticionaria. Por tal razón, Hogar Sanación solicitó indemnización por los daños y perjuicios ocasionados por la parte peticionaria y el tercero demandado por una cantidad no menor a $1,020,000.

Asimismo, en la misma fecha, Hogar Sanación presentó una *Moción para solicitar la conversión al trámite ordinario*, en la que solicitó que el tribunal convirtiese el desahucio sumario a un procedimiento de desahucio ordinario. En síntesis, sostuvo que el caso presenta controversias complejas de hecho y de derecho que impiden un procedimiento sumario de desahucio. Según argumentó, en el caso se han acumulado reclamaciones adicionales, incluyendo cobro de dinero y reconvención por incumplimiento contractual, lo cual excede el alcance limitado del proceso sumario. Además, Hogar Sanación adujo que está invocando como defensa la doctrina de *exceptio non adimpleti contractus* para justificar la retención de la posesión del inmueble y que existe un conflicto de título que hace improcedente el desahucio sumario. De la misma manera, planteó que el trámite sumario no garantiza adecuadamente el debido proceso de ley en cuanto a la oportunidad de presentar prueba y defenderse.

El 12 de junio de 2024, la parte peticionaria presentó una *Oposición a moción de conversión al trámite ordinario*. En la misma sostuvo que, cuando Hogar Sanación trató de

ejercer el derecho de opción de compra, ya había caducado el plazo, por lo cual no le aplicaba el precepto de *exceptio non adimpleti contractus*. Además, la parte peticionaria alegó que los embargos no constituían una prohibición a la enajenación del inmueble y, por lo tanto, no constituía dolo. De igual forma, indicó que no procedía la conversión al trámite ordinario ya que Hogar Sanación no poseía mejor título sobre las propiedades, pues su posesión se basaba en el contrato de arrendamiento. También adujo que la causa presentada por Hogar Sanación contra el tercero demandado no debe desvirtuar la naturaleza sumaria del desahucio, ya que este no es titular de las propiedades arrendadas, ni parte en el contrato o apoderado de la parte peticionaria.

Cabe destacar que, el 13 de junio de 2024, la parte peticionaria presentó una *Moción de desestimación*, en la cual solicitó la desestimación de la reconvención y la demanda contra tercero. Ello se solicitó pues las defensas planteadas por Hogar Sanación no justificaban la concesión del remedio solicitado. Además, arguyó que permitir a Hogar Sanación una causa de acción sobre daños extracontractuales atentaría contra la naturaleza sumaria del proceso de desahucio instado.

En atención a esta moción de desestimación y tras varios trámites procesales, el 18 de octubre de 2024, el Tribunal de Primera Instancia (TPI) dictó una *Sentencia*, mediante la cual desestimó sin perjuicio la demanda contra

tercero instada por Hogar Sanación debido a fallas en el emplazamiento y evidencia presentada que mostraba que los cónyuges estaban casados bajo un régimen de separación de bienes. Inconforme con esta determinación, Hogar Sanación acudió ante el Tribunal de Apelaciones (TA) mediante una *Apelación*.

El 31 de enero de 2025, el foro apelativo intermedio modificó la *Sentencia* apelada para únicamente desestimar la demanda contra tercero contra la Sociedad Legal de Gananciales, ya que el régimen económico que rige en el matrimonio López-Ramírez es de capitulaciones.

Así las cosas, el 20 de mayo de 2025, la parte peticionaria presentó una *Solicitud de reanudación de los procedimientos y de señalamiento de vista de desahucio*, en la cual reiteró que el caso debía continuarse bajo el proceso sumario. Por consiguiente, solicitó que se denegase la solicitud para la conversión del proceso a uno ordinario y se señalara una vista de desahucio.

En consecuencia, el 21 de mayo de 2025, el TPI emitió una *Orden* en la cual tomó conocimiento de la solicitud de reanudación presentada por la parte peticionaria, declaró no ha lugar la solicitud de conversión del procedimiento a uno ordinario y señaló una fecha próxima, a saber, el 29 de mayo de 2025, para la vista de desahucio.

En respuesta a la *Orden* emitida por el TPI, el 22 de mayo de 2025, Hogar Sanación presentó una *Moción*

*informativa*. En síntesis, Hogar Sanación expuso que no se le otorgó un término de veinte (20) días para poder presentar su oposición fundamentada contra la reanudación del desahucio por vía del proceso sumario. Además, Hogar Sanación argumentó que continuar con el proceso de desahucio sumario iría contra la determinación del TA, ya que la acumulación de una parte y una causa de acción adicional en el pleito de desahucio lo tornó incompatible con un trámite sumario y, por consiguiente, era mandatorio que la acción se llevara mediante el trámite ordinario para poder cumplir con lo emitido por el Tribunal de Apelaciones.

El mismo 22 de mayo de 2025, Hogar Sanación acudió al TA mediante un escrito titulado *Urgente moción en auxilio de jurisdicción y en solicitud de orden dirigida al Tribunal de Primera Instancia para que cumpla con el mandato y la sentencia de este Tribunal de Apelaciones*.

El 23 de mayo de 2025, el TA emitió una *Resolución* en la que declaró no ha lugar la moción de Hogar Sanación. De acuerdo con el foro apelativo intermedio, de querer impugnar la *Orden* emitida por el TPI, Hogar Sanación tenía que instar un recurso de *certiorari*, independiente a la apelación previamente atendida.

Cumpliendo con la *Resolución*, el 27 de mayo de 2025, Hogar Sanación recurrió ante el TA mediante un recurso de *certiorari*. En resumen, solicitó que se revocara la

determinación emitida por el TPI y se ordenase que el caso de desahucio se dilucidara mediante un proceso ordinario.

Así las cosas, el 24 de junio de 2025, notificada el 30 de junio de 2025, el TA dictó una *Sentencia*, en la cual revocó la orden del foro primario y determinó que corresponde que el caso se dilucide por la vía ordinaria. El foro intermedio indicó que, a pesar de no existir un conflicto de título, las alegaciones y defensas de Hogar Sanación añadían una complejidad al litigio que hacía improcedente el trato del caso mediante la vía sumaria. De este modo, concluyó que el caso excede los parámetros establecidos para el trámite sumario, el cual está reservado para la procedencia del desalojo de la propiedad estrictamente. Ello debido a que, entre otras cosas, se había presentado una reconvención y una demanda contra tercero, lo cual amplió significativamente el ámbito de la controversia y los sujetos procesales involucrados. Además, el foro apelativo intermedio puntualizó que la parte demandante en el caso consintió expresamente a la realización de mejoras a la propiedad, lo que requiere un descubrimiento de prueba. Por tal razón, esbozó que era necesaria la celebración de un descubrimiento de prueba que ayude a las partes a sustentar sus alegaciones y defensas, y por medio del cual se incentive la búsqueda de la verdad.

En respuesta, el 15 de julio de 2025, la parte peticionaria presentó una *Moción de reconsideración* ante el TA. No obstante, el 1 de agosto de 2025, el foro intermedio emitió una *Resolución*, denegando la reconsideración.

Insatisfecho con la determinación del TA, el 2 de septiembre de 2025, la parte peticionaria acudió ante nos mediante un *Recurso de certiorari.* En resumen, solicitó la revocación de la *Sentencia* emitida por el foro intermedio. En particular, la parte peticionaria expuso los siguientes dos errores:

> Erró el TA y actuó sin jurisdicción al expedir el recurso de *certiorari* presentado por HSLLC y revocar la resolución interlocutoria del TPI que denegaba la conversión del proceso ordinario, cuando se estaba ante un proceso de desahucio sumario regido bajo el procedimiento especial dispuesto en el CEC y que solo permite la apelación de sentencias de desahucio y no de resoluciones interlocutorias no relacionadas a ello.

> Erró el TA al revocar la resolución interlocutoria del TPI que denegaba la recurrida HSLLC la conversión del procedimiento sumario de desahucio a uno ordinario, basada su decisión en meras alegaciones contenidas en la reconvención presentada por HSLLC y cuando de la sentencia emitida se desprende que la parte recurrida HSLLC no tiene mejor título en la propiedad arrendada que los peticionarios.

De esta forma, la parte peticionaria argumentó que, habiendo el TPI denegado la conversión al trámite ordinario del proceso sumario de desahucio, el TA carecía de jurisdicción para atender el recurso de *certiorari* presentado por Hogar Sanación. Dijo esto pues, según las

disposiciones del Código de Enjuiciamiento Civil, *infra*, Hogar Sanación solamente podría recurrir ante el TA de la sentencia final de desahucio que en su día se emita. Por otro lado, la parte peticionaria adujo que la discreción del TPI para convertir el proceso sumario de desahucio a uno ordinario no puede descansar exclusivamente en meras alegaciones de Hogar Sanación.

Examinado el recurso en sus méritos, el 5 de diciembre de 2025, expedimos el auto de *certiorari* solicitado. Quedando la petición de *certiorari* acogida como el alegato de la parte peticionaria, el 19 de marzo de 2026, Hogar Sanación presentó un *Alegato del recurrido Hogar Sanación, LLC*.

En síntesis, Hogar Sanación argumentó que el Tribunal de Apelaciones actuó correctamente al revocar al foro primario, ya que el pleito dejó de ser uno simple de posesión y pasó a involucrar múltiples controversias complejas. Asimismo, enfatizó que en este caso se añadieron partes adicionales, se presentó una reconvención y una demanda contra tercero y se introdujeron reclamaciones independientes que trascienden la mera posesión del inmueble, lo que hace incompatible el trámite sumario. Por otra parte, en cuanto a si la determinación del TA es consistente con la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, Hogar Sanación indicó que, aunque la orden recurrida es una resolución interlocutoria, su

revisión era necesaria para evitar un fracaso irremediable de la justicia.

Contando con las comparecencias de las partes, resolvemos.

## II

### A. Jurisdicción

La jurisdicción es "el poder o autoridad con que cuenta un tribunal para considerar y decidir los casos y las controversias ante su consideración". *Greene et als. v. Biase et als.*, 2025 TSPR 83, 216 DPR __ (2025); *Metro Senior v. AFV*, 209 DPR 203, 208-209 (2022); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). En función de ello, los tribunales deben ser celosos al constatar su jurisdicción y carecen de discreción para asumirla si no la poseen. *Greene et als. v. Biase et als., supra.* Recientemente, reiteramos que los asuntos jurisdiccionales deben resolverse con preferencia, pues una sentencia dictada sin jurisdicción es nula y se considera inexistente. Íd.

### B. Desahucio sumario

Sabido es que la acción de desahucio "es el mecanismo que tiene el dueño o la dueña de un inmueble para 'recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna'". *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020), citando a

*Fernández & Hno. v. Pérez,* 79 DPR 244, 247 (1956). En específico, el desahucio sumario responde al interés del Estado de atender expeditamente la reclamación del dueño del inmueble. *Markovic v. Meldon y otro*, 2025 TSPR 99, 216 DPR __ (2025), citando a *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018).

En otras ocasiones hemos señalado que "[l]a característica medular de un procedimiento civil sumario es lograr, lo más rápido y económicamente posible, la reivindicación de determinados derechos, reduciendo al mínimo constitucionalmente permisible el elenco de garantías procesales". *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234 (1992). Por ello, este proceso "[c]onlleva acortar términos -en ocasiones, hacerlos improrrogables- y prescindir de ciertos trámites comunes al proceso ordinario sin negar al demandado o querellado una oportunidad real de presentar efectivamente sus defensas". Íd.

**Por lo anterior, en el pasado hemos reiterado que en la acción sumaria de desahucio se debe limitar la concurrencia o consolidación de otras acciones o defensas. *Markovic v. Meldon y otro, supra,* citando a *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016). De hecho, desde tiempos inmemoriales hemos sido enfáticos en que "el trámite sumario del desahucio hace inadmisible cualquier**

**reconvención o contrademanda por parte del desahuciado".**
**_Fernández & Hno. v. Pérez_, _supra_, pág. 248.**

De igual manera, este Tribunal ha destacado que los conflictos de título no pueden dilucidarse en un procedimiento de desahucio. _Crespo Quiñones v. Santiago Velázquez_, 176 DPR 408, 431 (2009). Así, recientemente reiteramos que los conflictos de título existen "cuando [la parte demandada] presenta prueba suficiente que tienda a demostrar su derecho a ocupar el inmueble en controversia y que tiene un título tan bueno o mejor que el [de la parte demandante]". _Markovic v. Meldon y otro, supra,_ citando a _Crespo Quiñones v. Santiago Velázquez, supra,_ pág. 431.

Ahora bien, ocasionalmente existe la necesidad de que el procedimiento sumario de desahucio se convierta en uno ordinario. _Turabo Ltd. Partnership v. Velardo Ortiz_, _supra,_ pág. 241. Empero, ello no puede ser una regla automática, sino que el sano discernimiento judicial será la guía para prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones. Íd. Además, será deber del demandado establecer _prima facie_ los méritos de su defensa y será el juzgador quien deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario. Íd., págs. 245-246.

Por otra parte, el procedimiento de desahucio sumario está regido por los Arts. 620-634 del Código de

Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. En lo pertinente al caso de autos, cabe destacar que las sentencias que el foro de instancia emite en los procesos de desahucio sumario son apelables. *Adm. Vivienda Pública v. Vega Martínez, supra*, pág. 234. Así, el Art. 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831, dispone que **"[l]as apelaciones deberán imponerse en el término de cinco (5) días, contados desde la fecha de archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados"**. (Énfasis suplido).

Resulta necesario señalar que el término de cinco (5) días para presentar una apelación fue introducido mediante una enmienda bajo la Ley Núm. 86 de 5 de junio de 2011. Previo a esta enmienda, el término para apelar era de treinta (30) días. No obstante, el legislador cambió el término para "agilizar el procedimiento de desahucio". Exposición de Motivos de la Ley Núm. 86-2011.

### C. Discreción judicial

La discreción significa "tener poder para decidir de una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Ramírez v. Policía de P.R.*, 158 DPR 320, 340 (2002). En otras palabras, la discreción no significa "poder para actuar de una forma y otra haciendo abstracción del derecho", por lo que esta es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una

conclusión justiciera". Íd. Así, el ejercicio de la discreción está inexorablemente atado al concepto de la razonabilidad. Íd.

Cabe destacar que se incurre en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podrá pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Negrón Ramírez*, 213 DPR 895, 913 (2024).

Un tribunal apelativo no habrá de intervenir con el ejercicio de la discreción del foro de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## III

En el recurso ante nuestra consideración, la parte peticionaria señala como primer error que el TA actuó sin jurisdicción al expedir un recurso de *certiorari* y revocar la resolución interlocutoria emitida por el TPI, la cual denegaba la conversión del proceso sumario de desahucio a uno ordinario. Según sostuvo, al regirse el proceso sumario de desahucio por las disposiciones del Código de Enjuiciamiento Civil, Hogar Sanación solamente podía

recurrir ante el TA de la sentencia final de desahucio que en su día emitiera el TPI. Por su parte, Hogar Sanación enfatizó que, aun cuando se trataba de una orden interlocutoria, su revisión por el TA era necesaria para evitar un fracaso irremediable de la justicia. De esta manera, Hogar Sanación expresó que el TA actuó correctamente al revocar al foro primario, pues el pleito pasó a involucrar controversias complejas, lo cual ameritaba que el proceso se convirtiera en uno ordinario. Adelantamos que no le asiste la razón a Hogar Sanación.

Asimismo, como segundo señalamiento de error, la parte peticionaria sostuvo que el TA cometió un error manifiesto en la medida en que ordenó la conversión del proceso a base de meras alegaciones de la reconvención presentada por Hogar Sanación. Por su parte, Hogar Sanación insistió en que el TA aplicó correctamente los principios jurídicos que rigen el momento en que un desahucio debe convertirse de un trámite sumario a uno ordinario. Según alegó, la discreción de un tribunal para la conversión del trámite sumario de desahucio a uno ordinario no es absoluta ni puede ejercerse de manera arbitraria. De este modo, Hogar Sanación argumentó que, cuando las circunstancias del caso demuestran objetivamente que las controversias planteadas son complejas y requieren prueba extensa, la conversión al trámite ordinario no es una cuestión de discreción, sino una exigencia del debido proceso de ley.

Según hemos señalado anteriormente, los asuntos relacionados a la jurisdicción siempre deben resolverse con preferencia. Sin embargo, por estar entrelazados ambos errores señalados, los discutimos en conjunto.

A modo de repaso, luego de que el TPI denegara la conversión del proceso sumario de desahucio a uno de naturaleza ordinaria, Hogar Sanación acudió al foro apelativo intermedio mediante una *Urgente moción en auxilio de jurisdicción y en solicitud de orden dirigida al Tribunal de Primera Instancia para que cumpla con el mandato y la sentencia de este Tribunal de Apelaciones*. Lo anterior se planteó en atención a un recurso que el TA ya había atendido referente a la procedencia de una demanda contra tercero. Según Hogar Sanación, la continuación de los procedimientos cónsono con el dictamen del TA respecto a que solo procedía desestimar la *Demanda contra tercero* en contra de la sociedad legal de gananciales compuesta entre David Ramírez Rodríguez y Adalberto López Torres, implicaba que el procedimiento de desahucio debía continuarse bajo el trámite ordinario. De esta manera, Hogar Sanación sostuvo que la *Orden* interlocutoria emitida por el TPI es incompatible con el mandato del TA.

No obstante, mediante *Resolución* emitida el 23 de mayo de 2025, el TA determinó que carecía de jurisdicción para atender la moción de auxilio de jurisdicción presentada por Hogar Sanación. Esto se debió a que se trataba de un

dictamen distinto que planteaba una controversia diferente a la que había resuelto previamente. Por consiguiente, el TA expresó que si Hogar Sanación interesaba impugnar la *Orden* del TPI del 21 de mayo de 2025, la cual denegaba la conversión del proceso al trámite ordinario, debía instar un recurso de *certiorari*. Así, en atención a la *Resolución* del TA, el 27 de mayo de 2025, Hogar Sanación recurrió ante el TA mediante un recurso de *certiorari*. En resumen, solicitó que se revocara la determinación emitida por el TPI y se ordenase que el caso de desahucio se dilucidara mediante un proceso ordinario.

En consecuencia, el 24 de junio de 2025, el TA dictó una *Sentencia*, en la cual revocó la orden del foro primario y determinó que corresponde que el caso se dilucide por la vía ordinaria. El foro apelativo intermedio concluyó que, a tenor con la Regla 40 del Reglamento del Tribunal de Apelaciones, procedía expedir el auto de *certiorari* y revocar la *Orden* del TPI. Aun cuando no justificó más allá de lo anterior su intervención para revisar una determinación interlocutoria, el TA fundamentó su postura en que el caso excede los parámetros establecidos para el trámite sumario de desahucio, el cual está reservado para estrictamente la procedencia del desalojo de la propiedad.

Sabido es que el proceso de desahucio puede celebrarse por la vía sumaria o por la vía ordinaria. Según mencionáramos en nuestra exposición del derecho, cuando se

trata de un desahucio sumario, el proceso se rige por las disposiciones del Código de Enjuiciamiento Civil. Así, mediante estas disposiciones se logra, lo más rápido y económicamente posible, la reivindicación de determinados derechos por parte del dueño del inmueble. Véase *Turabo Ltd. Partnership v. Velardo Ortiz*, supra, pág. 234. En específico, al remitirnos a las disposiciones del Código de Enjuiciamiento Civil, hallamos que no se provee un término para revisar determinaciones interlocutorias del TPI en procesos de desahucio sumario. Por el contrario, solamente se provee un término para apelar la sentencia que recaiga luego de un juicio de desahucio.

En particular, el Art. 629 del Código de Enjuiciamiento Civil, *supra,* establece un término corto de cinco (5) días para imponer cualquier apelación. Cabe destacar que este término no siempre fue tan breve pues, previo a las enmiendas introducidas por la Ley Núm. 86 de 2011, el término para apelar una sentencia en un caso de desahucio sumario era de treinta (30) días. Sin embargo, el legislador tuvo la intención de acortar ese término para "agilizar el procedimiento de desahucio". Así pues, se puede apreciar que cuando se trata de un procedimiento de desahucio de naturaleza sumaria, el propósito del legislador se enmarca en la agilidad del proceso. De ahí que resulta incompatible con esa finalidad de celeridad permitir la revisión de determinaciones interlocutorias en

CC-2025-0588                                                21

un procedimiento sumario de desahucio, pues ello inevitablemente dilataría su trámite y frustraría el propósito legislativo de proveer un mecanismo expedito para la adjudicación de estas controversias.

En el caso de autos, la *Demanda* presentada fue sobre desahucio sumario y cobro de dinero al amparo de las disposiciones del Código de Enjuiciamiento Civil. Según mencionáramos anteriormente, mediante la *Orden* emitida el 21 de mayo de 2025, el TPI declaró no ha lugar la solicitud de conversión del procedimiento a uno ordinario presentada por Hogar Sanación y quedó preservado el carácter sumario del caso de autos.

No hay duda de que esta *Orden* fue una determinación interlocutoria. Ello es así pues solamente pone fin a un incidente dentro del proceso judicial, a saber, la solicitud de conversión del proceso sumario al trámite ordinario. Véase *Johnson & Johnson v. Mun. de San Juan,* 172 DPR 840, 848 (2007). Por consiguiente, si Hogar Sanación no estaba de acuerdo con la determinación del TPI referente a la no conversión al trámite ordinario del proceso de desahucio, este debía esperar a que el TPI dictara sentencia en el caso para acudir en apelación ante el TA dentro del término de cinco (5) días que dispone el Art. 629 del Código de Enjuiciamiento Civil, *supra.* Ello es así pues resolvemos que la revisión a través de un recurso de *certiorari* de una determinación interlocutoria es

incompatible con el proceso sumario de desahucio.

Por consiguiente, en atención al carácter sumario del proceso de desahucio, una parte que pretenda impugnar una determinación interlocutoria en un procedimiento de desahucio de naturaleza sumaria deberá esperar hasta que se dicte sentencia final para entonces instar un recurso de apelación a base del error alegado, dentro del término de cinco (5) días que dispone el Código de Enjuiciamiento Civil. De esta forma, reiteramos que Hogar Sanación no podía presentar el recurso de *certiorari* para revisar la determinación interlocutoria del TPI ante el foro apelativo intermedio y este último, de igual manera, no tenía jurisdicción para atender el recurso, por lo que le asiste la razón a la parte peticionaria en cuanto a su primer señalamiento de error.

Por otro lado, en este caso no mediaban circunstancias que justificaran la intervención del foro apelativo intermedio con la discreción del foro primario de denegar la conversión del desahucio sumario a uno de naturaleza ordinaria. Nos explicamos a continuación.

**En ocasiones anteriores, hemos sido enfáticos respecto a que la conversión de un proceso de desahucio sumario a uno de naturaleza ordinaria descansa en la discreción del juez.** *Turabo Ltd. Partnership v. Velardo Ortiz*, *supra*, **pág. 241.** Será el juzgador quien auscultará los méritos de las defensas esgrimidas y los hechos específicos que se aducen

para proceder, si así lo entiende, a ordenar la conversión del procedimiento sumario a uno de naturaleza ordinaria. Véase *Markovic v. Meldon y otro,* supra; Turabo *Ltd. Partnership v. Velardo Ortiz*, *supra*, pág. 246. Por otro lado, si bien es cierto que cuando se acumulan otras reclamaciones o defensas afirmativas, se puede tramitar el desahucio por la vía ordinaria, ello no configura una regla automática. *Markovic v. Meldon y otro,* supra; Turabo *Ltd. Partnership v. Velardo Ortiz*, *supra*, pág. 241.

Asimismo, sabido es que la discreción significa "tener poder para decidir de una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Ramírez v. Policía de P.R.*, *supra*, pág. 340. En otras palabras, la discreción no significa "poder para actuar de una forma y otra haciendo abstracción del derecho", por lo que esta es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Íd. Así, el ejercicio de la discreción está inexorablemente atado al concepto de la razonabilidad. Íd.

Cabe destacar que un tribunal apelativo no habrá de intervenir con el ejercicio de la discreción del foro de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, *supra*, pág. 709.

En el presente caso, no surge del expediente que el TPI haya incurrido en abuso de discreción al denegar la

solicitud de conversión del procedimiento sumario a uno ordinario. En específico, surge del expediente que, luego de presentar su *Contestación a demanda, reconvención y demanda contra tercero*, Hogar Sanación presentó una *Moción para solicitar la conversión al trámite ordinario.* En esta alegó que las defensas afirmativas y las alegaciones en la reconvención y demanda contra tercero demuestran que esta tiene un título superior al del arrendador para continuar ostentando la posesión de los locales. Asimismo, Hogar Sanación argumentó que estas defensas controvierten hechos esenciales que deben ser ventilados mediante un proceso ordinario que garantice el debido proceso de ley. Posteriormente, la parte peticionaria presentó su *Oposición a moción de conversión al trámite ordinario*, en la cual reiteró la necesidad de que se mantenga la naturaleza sumaria del proceso y se señale vista de desahucio y cobro de dinero.

Luego de varios trámites procesales, incluida una vista de estatus en la cual la juez expresó que en su momento atendería la solicitud, el 20 de mayo de 2025 la parte peticionaria presentó una *Solicitud de reanudación de los procedimientos y de señalamiento de vista de desahucio*. En la misma reiteró su solicitud de que se deniegue la conversión del procedimiento a uno ordinario. Así, luego de considerar los planteamientos de las partes, el foro primario determinó que la controversia podía

continuar ventilándose mediante el trámite sumario de desahucio. Tal determinación se encuentra dentro del ámbito de discreción que nuestro ordenamiento le reconoce al juzgador de instancia para auscultar los méritos de las defensas presentadas y evaluar si estas justifican apartarse del procedimiento expedito dispuesto en el Código de Enjuiciamiento Civil.

Por otra parte, hemos indicado anteriormente que los conflictos de título no pueden dilucidarse bajo el trámite sumario de desahucio pues en este proceso únicamente se trata de recobrar la posesión de un inmueble quien tiene derecho a ella. *C.R.U.V. v. Román*, 100 DPR 318, 321 (1971). De esta manera, cuando una parte demandada presenta una solicitud de conversión al trámite ordinario de un proceso sumario de desahucio por un alegado conflicto de título, debe presentar prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante. Íd., en la pág. 322. Una mera alegación de título desprovista de prueba es insuficiente para derrotar la acción sumaria de desahucio. *Martínez Santiago v. Dalmau Andrades,* 93 DPR 191, 194 (1966).

Entre sus defensas levantadas, Hogar Sanación sostuvo que, bajo la excepción de contrato no cumplido, tiene derecho a permanecer en la propiedad. Ello se alega pues, según argumentó, la parte peticionaria hizo falsas

representaciones e incumplió con su parte de vender la propiedad cuando Hogar Sanación recurrió a ejercer su derecho a opción. Aun cuando reconocemos que estas defensas fueron levantadas oportunamente por parte de Hogar Sanación, ciertamente estas no son suficientes para demostrar que existe un conflicto de título que amerite la tramitación del caso mediante la vía ordinaria.

Por último, resulta meritorio aclarar que la mera presentación de una reconvención y una demanda contra tercero no obliga al tribunal de instancia a convertir de manera automática el proceso sumario de desahucio a uno ordinario. Recalcamos que la determinación sobre cómo manejar el proceso responde a la sana discreción del juzgador. No obstante, **hemos establecido en ocasiones anteriores que "el trámite sumario del desahucio hace inadmisible cualquier reconvención o contrademanda por parte del desahuciado".** *Fernández & Hno. v. Pérez*, *supra*, **pág. 248.** Por lo tanto, en el caso de autos, ante la presentación por parte de Hogar Sanación de una reconvención y una demanda contra tercero, y la posterior determinación del tribunal de denegar la conversión al trámite ordinario, corresponde al juzgador de instancia adoptar medidas dirigidas a salvaguardar la naturaleza expedita del procedimiento. Ello podría incluir la desestimación sin perjuicio o la separación o tramitación independiente de la reconvención y demanda contra tercero.

**IV**

Por los fundamentos antes expuestos, se revoca la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al foro de instancia para que sin dilación alguna proceda a calendarizar y celebrar la vista de desahucio sumario dentro del término de diez (10) días contado a partir de la notificación de esta determinación, sin la necesidad de esperar por nuestro mandato.

Se dictará sentencia en conformidad.


Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Adalberto López Torres y otros<br><br>Peticionario<br><br><br>v.<br><br><br>Hogar Sanación, LLC y otros<br><br>Recurridos | | CC-2025-0588 |

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al foro de instancia para que sin dilación alguna proceda a calendarizar y celebrar la vista de desahucio sumario dentro del término de diez (10) días contado a partir de la notificación de esta determinación, sin la necesidad de esperar por nuestro mandato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una *Opinión de Conformidad en parte y Disidente en parte* a la cual se une la Jueza Presidenta Oronoz Rodríguez.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Adalberto López Torres y otros<br><br>Peticionario<br><br>v.<br><br>Hogar Sanación, LLC y otros<br><br>Recurridos | CC-2025-0588 | |

Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 23 de junio de 2026.

Como estoy esencialmente de acuerdo con el dictamen al que se llega hoy, pero respetuosamente discrepo de la norma que se pauta, estoy conforme en parte y disiento en parte con la *Opinión* emitida por este Tribunal.

Por un lado, coincido con el sentido mayoritario de que procedía revocar al Tribunal de Apelaciones, pues el foro intermedio erró al cambiar el carácter sumario del proceso de desahucio a uno ordinario cuando, a todas luces, el Tribunal de Primera Instancia actuó conforme a derecho y dentro de su discreción al denegar la conversión.

Por otro lado, respetuosamente discrepo de la norma fijada en esta ocasión, pues estamos realmente ante una laguna jurídica –la ausencia de una disposición legislativa expresa sobre el derecho a recurrir de determinaciones no finales en el procedimiento de desahucio sumario– que nos corresponde atender de forma no muy distinta a los procesos sumarios

laborales, tal y como hicimos en *Medina Nazario v. McNeil Healthcare LLC*, *infra*, y *Dávila, Rivera v. Antilles Shipping, Inc.*, *infra*. En lugar de interpretar el silencio del estatuto como un impedimento a la revisión de todas las determinaciones interlocutorias, adoptaría un criterio más práctico que permita a los tribunales examinar este tipo de dictámenes en casos de desahucio sumario cuando medien circunstancias excepcionales. Específicamente, cuando el foro primario actúe sin jurisdicción, la decisión involucre la variación del carácter sumario, la revisión inmediata pueda disponer por completo del pleito o la revisión pueda evitar una grave injusticia. Adviértase que existen circunstancias excepcionales en las que se requiere la pronta intervención de este Tribunal para que los remedios de un arrendador o de un arrendatario puedan ser otorgados en forma oportuna y adecuada. En ese sentido, la norma absoluta pautada en la Opinión Mayoritaria dará al traste en múltiples situaciones, precisamente, con el propósito legislativo en que ancla su razonamiento.

Por el contrario, con las salvaguardas propuestas en esta ponencia no solo cumpliríamos la voluntad legislativa de acortar los términos para revisar una sentencia en este tipo de casos, sino que llenaríamos de forma justa, no tajante, el vacío legislativo y garantizaríamos que los foros apelativos conservemos la facultad de corregir oportunamente situaciones de falta de jurisdicción y evitar fracasos irremediables de la justicia. A fin de cuentas, no se debe perder de vista que

balancear los intereses económicos y las garantías individuales es un imperativo medular en el contexto social de los desahucios. Tampoco debe fomentarse que controversias como las que subyacen a este caso esperen obligatoriamente a la resolución final cuando puedan existir méritos para conceder lo que se pide y, sobre todo, se cuente con términos jurisdiccionales acortados y dirigidos a evitar la dilación. Este es uno de los mejores ejemplos de que la norma absoluta pautada evitará que, en múltiples ocasiones, no se observe el propósito legislativo. Ante esa realidad, la capacidad de brindar certeza pronta a las controversias, por parte de los foros apelativos, no está reñida con el propósito legislativo, sino todo lo contrario: lo suplementa adecuadamente.

En adelante, expongo los fundamentos de esta discrepancia.

I

Por considerar que las incidencias procesales no lo ameritan, prescindo de realizar una exposición detallada de ellas. Sirva como resumen que la presente controversia nació en el pleito de desahucio sumario y cobro de dinero promovido por el señor Adalberto López Torres por sí y como apoderado de sus tres hermanas (en conjunto, parte peticionaria) en contra de Hogar Sanación, LLC (Hogar Sanación o parte recurrida). En esencia, la parte peticionaria reclamó que Hogar Sanación incumplió con el pago del canon acordado para el arrendamiento de ciertas fincas, entre otras violaciones al contrato entre las partes. Por ello, solicitó al Tribunal de Primera Instancia

(TPI o foro primario) que ordenara a Hogar Sanación desalojar la propiedad y pagar la renta vencida, penalidades por el incumplimiento e intereses por mora.

Por su parte, Hogar Sanación negó las alegaciones, intentó promover una causa de acción contra un tercero y, entre otras cosas, le imputó a la parte peticionaria haber sido la primera en incumplir el contrato, al no reconocer el ejercicio de cierto derecho de opción de compra, según lo pactado. En contraste, solicitó al foro primario que ordenara la indemnización por daños y perjuicios en contra de la parte peticionaria y el tercero demandado por una cantidad ascendente a poco más de un millón de dólares.

Además de ese petitorio, la parte recurrida le solicitó al TPI que convirtiera el procedimiento de desahucio sumario en uno de carácter ordinario. A su juicio, el caso presentaba controversias complejas de derecho y de hechos, comprendía reclamaciones adicionales que incluían cobro de dinero y reconvención e involucraba un conflicto de título. Según su posición, todo ello superaba el alcance limitado del proceso sumario.

Luego de múltiples trámites procesales, los cuales incluyeron la desestimación de la demanda contra tercero promovida por Hogar Sanación y la confirmación de ese dictamen por el Tribunal de Apelaciones, el TPI declaró no ha lugar la conversión del procedimiento a ordinario y señaló una vista de desahucio.

En desacuerdo, Hogar Sanación planteó, entre otras cosas, que, dada la determinación del foro intermedio, la acumulación de una parte y la presentación de una causa de acción adicional al desahucio tornaban incompatible el trámite sumario. Por ello, la parte recurrida reiteró que procedía llevar a cabo un procedimiento ordinario.

Regresado el pleito al Tribunal de Apelaciones mediante un recurso de *certiorari* radicado por Hogar Sanación, en el que solicitó que se revocara la negativa del foro primario a conducir un procedimiento ordinario de desahucio, el foro apelativo revocó al TPI. A esos efectos, ordenó que se dilucidara el caso por la vía ordinaria. Para este, las alegaciones y defensas de la parte recurrida complicaron el litigio de forma tal que hacía necesario abandonar el trámite sumario. Esto, pues se presentó una reconvención y una demanda contra tercero que superaron el ámbito restringido del desahucio sumario, limitado a evaluar la procedencia del desalojo de la propiedad. En ese análisis pesó que, para el foro intermedio, hacía falta realizar descubrimiento de prueba.

Inconforme, la parte peticionaria acudió ante nos y solicitó que revoquemos la *Sentencia* del Tribunal de Apelaciones. En esencia, expuso que este se equivocó al actuar sin jurisdicción y expedir el recurso de *certiorari* promovido por Hogar Sanación, pues el procedimiento de desahucio sumario no permite la revisión de resoluciones interlocutorias, sino únicamente la apelación de sentencias finales.

Acto seguido, expedimos el auto de *certiorari*. En consecuencia, las partes comparecieron y reiteraron sus argumentos. Con el beneficio de sus criterios, procedo a explorar los fundamentos de derecho que mejor explican mi posición sobre la *Opinión* que hoy emite este Tribunal.

II

A.

Son normas reiteradas que la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y resolver un caso o controversia; que el tribunal debe ser celoso guardián de su jurisdicción; que cuando no tenga jurisdicción sobre un caso, lo único que debe y puede hacer el tribunal es reconocerlo y desestimar el pleito; que, sobre todo, los asuntos jurisdiccionales deben ser resueltos con preferencia; y que aquellas determinaciones emitidas sin jurisdicción son nulas. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-387 (2020).

Estos últimos dos elementos huelga reiterarlos, ya que tienen implicaciones significativas sobre planteamientos de falta de jurisdicción. Presentado un argumento de esta índole, un tribunal no puede postergar su atención, pues corre el riesgo de que sus determinaciones no sean válidas. Íd. Por eso, precisamente, la falta de jurisdicción es un planteamiento imperecedero que puede traerse en cualquier etapa del procedimiento, a instancia de parte o por iniciativa propia del tribunal. Íd., pág. 386. Y no es para menos, pues, como norma general, los argumentos de falta de

jurisdicción <u>no pueden esperar a que los trámites judiciales concluyan para ser resueltos</u>. Esa realidad jurídica cobra relevancia en la controversia ante nos, toda vez que sería contrario al propósito legislativo retrasar innecesariamente una determinación en esa dirección.

En ese respecto, la ausencia de jurisdicción tiene dos importantes consecuencias adicionales sobre los tribunales. Por un lado, le impone a cada tribunal el deber ineludible de auscultar su propia jurisdicción. Íd. Por el otro, les impone a los foros apelativos la obligación de examinar la jurisdicción del tribunal apelado o la entidad recurrida. Íd.

B.

El desahucio sumario se caracteriza porque combina la acción de desahucio -el mecanismo del propietario o la propietaria de un inmueble para recuperar la posesión de su propiedad obteniendo el desalojo de la persona que la ostenta- con un proceso expedito, ágil y dirigido a solventar el asunto de forma rápida y económica. Véase *Cooperativa v. Colón Lebrón*, 308 DPR 812, 820 (2020). Esto último se intenta lograr con términos acortados, improrrogables, y con la eliminación de ciertos trámites comúnmente disponibles en el trámite de un caso ordinario. *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234 (1992).

Esta intención, reivindicar la posesión y el disfrute de un inmueble de la manera más rápida y económica, se alcanza reduciendo las garantías procesales al mínimo

constitucionalmente permisible. Íd. Por esto último, el método adoptado no puede sobrepasar esos mínimos garantizados por la Constitución y debe contemplar la revisión de los dictámenes más cruciales que tome el Tribunal de Primera Instancia. No se trata solo de la economía procesal, esto es, de no esperar a que el caso llegue a su fin para atender asuntos medulares, sino que también está de por medio exponer a la parte perdidosa a no recobrar o a perder la posesión de un bien inmueble cuando existen otras defensas o prueba que podría favorecerle. Esa posible exposición está aún más presente cuando la determinación involucra la conversión del procedimiento al trámite ordinario, como en este caso.

Dicho eso, los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2821-2838, reglamentan el procedimiento para el desahucio. Entre las características más relevantes de este, se dispone:

(1)   la comparecencia de las partes dentro de los diez (10) días siguientes a la presentación de la reclamación (Art. 623);

(2)   el emplazamiento simplificado y la citación apercibida de que de no comparecer se decretará el desahucio sin citarle ni oírle (Art. 624);

(3)   la celebración del juicio el día de la comparecencia, así como la presentación de prueba y la exposición de los argumentos de las partes (Art. 625);

(4)   la obligación del Tribunal de dictar sentencia dentro de un término mandatorio de hasta diez (10) días (Art. 625);

(5)   la limitación a cada parte de presentar prueba en el acto de comparecencia (Art. 626);

(6)   la inadmisibilidad de la presentación de prueba exógena al recibo o documento acreditativo de pago cuando la demanda se

fundamente en la falta de pago del canon convenido (Art. 627);

(7) la posibilidad excepcional y a solicitud de parte de permitir la acumulación de una reclamación de dinero fundamentada en la falta de pago del canon acordado (Art. 627);

(8) la apelación por la parte contra la cual recaiga la sentencia, conforme a lo dispuesto en la *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003,* Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 2 *et seq.* (Art. 628);

(9) el término de cinco (5) días para apelar (Art. 629);[1]

De un examen de estas disposiciones se desprende que el Código de Enjuiciamiento Civil no reglamenta la revisión de determinaciones interlocutorias tomadas por el foro primario en el procedimiento de desahucio. Sin embargo, es igual de cierto que tampoco la veda.

C.

Debido a los paralelos procesales existentes entre el desahucio y el proceso sumario en el contexto de reclamaciones laborales, conviene evaluar la *Ley de procedimiento sumario de reclamaciones laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2 de 1961) y el tratamiento jurídico que le hemos brindado. Como parte del andamiaje de protección laboral de nuestra jurisdicción, la Ley Núm. 2 de 1961 instituye un proceso sumario para ciertas reclamaciones

---

[1] Debe notarse que la Asamblea Legislativa ha variado el término para apelar con el que cuenta una parte inconforme con una determinación del foro primario en este tipo de casos. Por un lado, el término para apelar una sentencia de desahucio era de cinco (5) días hasta que, por virtud de la Ley Núm. 291-1998, fue aumentado a treinta (30) días. Ese fue el término hasta que la Ley Núm. 86-2011 lo redujo nuevamente a cinco (5) días.

laborales en el que figuran: los términos cortos para contestar una querella; la limitación de prórrogas; el reconocimiento de una sola oportunidad para responder a la querella; la penalidad de que se dicte sentencia en contra del querellado si no contesta; la limitación al descubrimiento de prueba; la prohibición de reconvenciones; la aplicación de las Reglas de Procedimiento Civil en lo que no esté en conflicto con sus disposiciones o el carácter sumario; y los plazos cortos para acudir al Tribunal de Apelaciones y al Tribunal Supremo. Véase *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 732 (2016) citando a *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923-924 (1996).

En ese marco, en *Dávila, Rivera v. Antilles Shipping, Inc.,* 147 DPR 483 (1999), este Tribunal resolvió que la presentación de un recurso de *certiorari* contra una resolución interlocutoria dictada en un caso tramitado bajo el procedimiento sumario al amparo de la Ley Núm. 2 de 1961, *supra*, no era compatible con el carácter sumario de estos casos laborales. En específico, estimó que la economía procesal –la necesidad de evitar que se concluya el procedimiento judicial cuando por vía de una resolución interlocutoria se pudiese cometer un error perjudicial– no tenía más peso que el carácter sumario, sino que atentaría contra esa naturaleza y esencia del proceso. *Dávila, Rivera v. Antilles Shipping, Inc.*, *supra*, pág. 494.

Por esa razón, este Tribunal pautó que quien desee impugnar resoluciones interlocutorias dictadas en el proceso sumario laboral deberá esperar hasta la sentencia final para solicitar la revisión. Íd., pág. 497. Sin embargo, fue enfático en que esa norma no era absoluta, pues los foros apelativos mantendrán y ejercerán su facultad revisora <u>en aquellos casos en los que la resolución interlocutoria que se pretenda impugnar haya sido dictada de forma *ultra vires* y sin jurisdicción.</u> Íd. A tal extremo, este Tribunal consignó esa pauta en el siguiente párrafo normativo:

> Así, pues, concluimos que, con el objetivo de salvaguardar la intención legislativa, autolimitamos nuestra facultad revisora, y la del Tribunal de Circuito de Apelaciones, en aquellos casos de resoluciones interlocutorias dictadas al amparo de la citada Ley Núm. 2 con excepción de aquellos supuestos en que la misma se haya dictado sin jurisdicción por el tribunal de instancia y en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una "grave injusticia" (miscariage of justice). (Énfasis suprimido). Íd., pág. 498.

De esta manera, en el contexto del proceso sumario laboral, se preceptuó jurisprudencialmente que como norma general las resoluciones interlocutorias no se revisarían, excepto cuando: (1) el foro primario haya actuado sin jurisdicción; (2) la revisión inmediata dispondría por completo del caso; y (3) la revisión tendría el efecto de evitar una grave injusticia. *Ortiz v. Holsum*, 190 DPR 511, 517 (2014); *Aguayo Pomales v. R&G Mortg.*, 169 DPR 36, 45-46 (2006).

Luego, en *Medina Nazario v. McNeil Healthcare LLC*, *supra*, tuvimos la oportunidad de examinar el término para recurrir de una resolución interlocutoria dictada en un caso tramitado bajo la Ley Núm. 2 de 1961 y si esas determinaciones podían ser objeto de reconsideración.[2] En esa ocasión, la controversia se suscitó porque, aunque este Tribunal había resuelto que algunas resoluciones interlocutorias en estos procesos serían revisables, la Ley Núm. 2 de 1961 no establecía qué términos aplicarían ni si se podía solicitar a los tribunales su reconsideración. *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 733. Es decir, existía un vacío jurídico sobre cuáles eran los términos para revisar aquellas determinaciones interlocutorias comprendidas dentro de las excepciones. Íd., pág. 742 (Opinión de conformidad del Juez Asociado señor Kolthoff Caraballo).

Para llenarlo, el Tribunal acudió a una de las enmiendas más recientes en aquel entonces a la Ley Núm. 2 de 1961, la cual estableció los términos de apelación para acudir al Tribunal de Apelaciones y al Tribunal Supremo, y decretó que la interpretación más cónsona con el propósito de la ley era extender estos términos por analogía a la revisión de determinaciones interlocutorias. Íd., pág. 736. Así, pautó que una parte inconforme tendría diez (10) días para acudir

---

[2] Respecto a esto último, este más alto foro rechazó que la figura de la reconsideración interlocutoria tuviese lugar en el procedimiento regulado por la Ley Núm. 2 de 1961. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 736 (2016).

al Tribunal de Apelaciones para revisar determinaciones interlocutorias del foro primario en un caso sumario laboral. Íd. Entretanto, la parte tendría veinte (20) días para acudir al Tribunal Supremo. Íd.

Ese razonamiento recibió el apoyo unánime de este Tribunal y en la Opinión de conformidad del Juez Asociado señor Kolthoff Caraballo, el compañero explicó acertadamente que bajo hermenéutica analógica, procedía aplicar los mismos términos de apelación a la revisión de determinaciones interlocutorias en el proceso sumario. Véase *Medina Nazario v. McNeil Healthcare LLC*, *supra* (Opinión de conformidad del Juez Asociado señor Kolthoff Caraballo). En específico, examinó si procedía aplicar el principio de analogía según:

> [la] existencia de una laguna legal sobre una cuestión que debe resolverse; [la] identidad de razón entre esta y otra situación que fue contemplada; [el] que no exista prohibición legislativa de recurrir a la analogía, y [el] que su aplicación no tenga el efecto de frustrar la intención que emana de la ley o la política pública que la inspira. Íd., págs. 743-744.

A la luz de ello, identificó que en la Ley Núm. 2 de 1961 existía un vacío o laguna legislativa sobre cuáles eran los términos para solicitar la revisión de determinaciones interlocutorias. Íd., pág. 742. También, coligió que existía identidad de razón entre los términos para apelar sentencias finales, contemplados expresamente por la Ley Núm. 2 de 1961, y proveer el mismo plazo para acudir en revisión de determinaciones interlocutorias. Íd., pág. 745. Lógicamente, no concluyó que existiera una prohibición legislativa de recurrir a la analogía ni que la aplicación de estos términos

frustrara la intención legislativa detrás del procedimiento sumario laboral. Íd. Con todo ello en mente, señaló que llegaba al mismo resultado que la opinión mayoritaria luego de tomar en consideración el principio de analogía, la política pública de rápida resolución de la Ley Núm. 2 de 1961, la Exposición de Motivos de la ley que instituyó los términos para acudir al Tribunal de Apelaciones y al Tribunal Supremo en el procedimiento sumario laboral, y la disposición de la aplicación de las Reglas de Procedimiento Civil en todo lo que no fuera incompatible con la Ley Núm. 2 de 1961 y su espíritu. Íd., pág. 745.

### III

En esta ocasión, este Tribunal colige que en este caso no mediaban circunstancias que justificaran que el foro intermedio interviniera con la discreción del Tribunal de Primera Instancia para denegar la conversión del desahucio sumario a uno de naturaleza ordinaria. Con esa apreciación y el resultado que ello implica, revocar al foro intermedio para la continuación de los procedimientos, estoy conforme. Eso bastaba para disponer del recurso. Como cuestión de realidad, es en virtud del ejercicio de la facultad de revisar interlocutoriamente ese dictamen que este Tribunal pudo otorgar un remedio adecuado y oportuno. De este modo cumplimos el propósito legislativo de no alargar un proceso innecesariamente.

Ahora bien, una mayoría de este Tribunal paradójicamente descarta de forma absoluta la revisión de

determinaciones interlocutorias dictadas en un procedimiento de desahucio sumario. Al respecto, resuelve que la revisión de este tipo de dictámenes mediante el recurso de *certiorari* es incompatible con el carácter sumario del desahucio y con la intención legislativa de impartir agilidad al proceso. Por ello, pauta que aquella parte inconforme con una determinación interlocutoria deberá esperar a que el foro primario dicte sentencia en el caso para entonces poder acudir en apelación al foro intermedio dentro del término de cinco (5) días del Art. 629 del Código de Enjuiciamiento Civil, *supra*. Con esa parte de la *Opinión*, respetuosamente disiento.

Distinto al criterio mayoritario, no hubiese llegado a esa conclusión absoluta. En su lugar, soy del criterio de que, similar a como hicimos en *Dávila, Rivera v. Antilles Shipping, Inc.*, *supra*, y *Medina Nazario v. McNeil Healthcare LLC*, *supra*, ciertas determinaciones interlocutorias emitidas por el foro primario deben estar sujetas a revisión por vía de *certiorari*, incluso cuando se trata de un desahucio sumario. Al igual que en aquellas situaciones, nos encontramos ante un estatuto, el Código de Enjuiciamiento Civil, que no contiene disposiciones respecto a la revisión de dictámenes interlocutorios, pero que tampoco la prohíbe explícitamente. Es decir, no se contempla ni se veda expresamente que los tribunales apelativos examinen la corrección de las decisiones del foro primario que no ponen punto final al pleito. En ese sentido, existe un vacío legal.

Lejos de excluir categóricamente la revisión por los foros apelativos de determinaciones interlocutorias en casos de desahucio sumario, lo que, en todo caso, correspondía era elaborar una norma justa, no tajante y comprehensiva que atendiera la laguna jurídica sin contravenir el carácter sumario del desahucio ni comprometer los derechos de las partes. Para lograrlo, hubiese resuelto como hicimos en *Dávila, Rivera v. Antilles Shipping, Inc.*, *supra*, y *Medina Nazario v. McNeil Healthcare LLC*, *supra*, y pautado que, como regla general, las determinaciones interlocutorias en un procedimiento de desahucio no serán revisables mediante *certiorari*, excepto cuando se traten de dictámenes que involucren la naturaleza procesal, la posible finalidad del pleito, los asuntos de jurisdicción o los potenciales fracasos irremediables de justicia.

En otras palabras, permitiría la revisión de la determinación interlocutoria si esta fue emitida sin jurisdicción, si la revisión dispondría por completo del caso, si la revisión evitaría una grave injusticia o si se trata de una determinación relacionada con la conversión del procedimiento sumario al trámite ordinario.

IV

Por lo antes expuesto, estoy conforme con el dictamen al que se llega en esta ocasión, mas no con la pauta normativa. En contraste, hubiese interpretado que, en los procedimientos de desahucio sumario, similar a las reclamaciones laborales de la misma índole, las partes ostentan el derecho a recurrir y

los tribunales conservan la facultad de revisar ciertas determinaciones interlocutorias, especialmente aquellas que involucren la naturaleza procesal, los asuntos de jurisdicción o los potenciales fracasos irremediables de justicia. **En ese extremo, respetuosamente disiento.**

Luis F. Estrella Martínez
Juez Asociado